OPINION
{¶ 1} On January 2, 2001, appellee, the Tuscarawas County Department of Jobs and Family Services, filed a complaint alleging Jeff Williamson born June 25, 1989, and Heather Williamson born March 14, 1991, to be abused, neglected and dependent children. Mother of the children is appellant, Brenda Devoll. Father is Kenneth Williamson. At the time of the filing of the complaint, appellant had legal custody of Jeff, but both Jeff and Heather lived with their father. Appellant had three other children living with her, Steven, 14, Christina, 6, and Shawn, 5. Appellant had custody of Christina and Shawn, but not Steven. The complaint was based upon allegations of inappropriate sexual contact between Mr. Williamson and Heather.[1]
 {¶ 2} An initial case plan with the ultimate goal being reunification with appellant was filed on February 16, 2001. By judgment entry filed February 28, 2001, the trial court found the children to be dependent. By judgment entry filed March 20, 2001, the trial court granted temporary custody of the children to appellee.
 {¶ 3} On November 9, 2001, appellee filed a motion to modify the temporary custody to permanent custody. Hearings were held on April 4 and 26, 2002. By judgment entry filed May 6, 2002, the trial court granted permanent custody of the children to appellee.
 {¶ 4} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
I
 {¶ 5} "A COURT SHOULD NOT A (SIC) MOTION FOR PERMANENT CUSTODY OF CHILDREN TO JOB AND FAMILY SERVICES WHEN SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, THE HEARING IMPAIRED MOTHER OF THE CHILDREN HAVING SUBSTANTIALLY COMPLIED WITH THE CASE PLAN AND IT BEING IN THE BEST INTEREST OF THE CHILDREN TO BE REUNIFIED WITH THEIR MOTHER WITHIN A REASONABLE TIME FRAME."
II
 {¶ 6} "JOB AND FAMILY SERVICES AGENCY MUST DEMONSTRATE THAT REASONABLE EFFORTS AT REUNIFICATION HAVE BEEN MADE BEFORE A PARENT CAN BE PERMANENTLY DIVESTED OF HER CHILDREN."
 I {¶ 7} Appellant claims the trial court's decision to grant permanent custody of the children to appellee was against the manifest weight of the evidence. We disagree.
 {¶ 8} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279.
 {¶ 9} R.C. 2151.414(E) sets out the factors relevant to determining permanent custody. Said section states in pertinent part as follows:
 {¶ 10} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353
of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 11} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 12} "(5) The parent is incarcerated for an offense committed against the child or a sibling of the child;
 {¶ 13} "(16) Any other factor the court considers relevant."
 {¶ 14} R.C. 2151.414(B) enables the court to grant permanent custody if the court determines by clear and convincing evidence that it is in the best interest of the child. R.C. 2151.414(D) sets out the factors relevant to determining the best interests of the child. Said section states relevant factors include, but are not limited to, the following:
 {¶ 15} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 16} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 17} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 18} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 19} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 20} The case plan set forth certain goals for appellant to meet. There was to be counseling for the children regarding their behavioral problems and past sexual abuse. T. at 95. Appellant's older child, Steven, was to undergo a sex offender assessment due to allegations of sexual contact involving Heather. T. at 23, 27, 38-39, 95, 96. In addition, appellant was to attend counseling, complete parenting education and obtain and maintain adequate housing. T. at 95. The objectives of the case plan were supervised by Muskingum County, where appellant resided. T. at 22, 105.
 {¶ 21} Although appellant is hearing impaired, the caseworkers, Cathy Loucks and Beth Bertini, felt they did not have any problems communicating. T. at 28, 100. If an interpreter was unavailable, they would "write back and forth." T. at 28-29, 100.
 {¶ 22} Appellant did not complete the entire parenting education offered to her, but did complete "a different type of parenting class" via videotape T. at 9, 25-26, 27, 35-36, 40, 64. Steven has not undergone sexual assessment. T. at 24, 95-96. Appellant has been unable to get Steven the required assessment because she does not have custody of him. T. at 24, 38, 41, 97. Appellant was told she needed to get custody of Steven, but has failed to do so. T. at 24-25, 97-98. At the time of the hearing, a psychologist on appellee's staff was seeing Steven. T. at 27, 44.
 {¶ 23} Although appellant attended counseling sessions, there were problems at the sessions. T. at 74, 96.
 {¶ 24} Even with agency assistance, appellant has had trouble maintaining housing due to "the behavior of her children and her paramour, Rick." T. at 30, 37, 97. The children damage the rental units causing evictions. T. at 30, 59, 65. Appellant also has had ongoing issues with budgeting for utilities. T. at 36. Appellant's telephone and electricity have been disconnected. T. at 36, 63, 97.
 {¶ 25} Ms. Loucks opined it would be difficult to introduce two more children, Jeff and Heather, into appellant's home due to the behavioral problems of appellant's three resident children. T. at 30-31. Steven has had some involvement with the juvenile court in Muskingum County and Christina has been suspended off the school bus thirteen times. T. at 31, 37. Ms. Loucks opined the children in appellant's care lack supervision. T. at 32.
 {¶ 26} Peggy Moody, a clinical counselor, counseled both Jeff and Heather. T. at 70. Ms. Moody testified Jeff continues to struggle with "some anger issues," and Jeff stated "he has seen Heather with dad and with his brother" regarding sexual abuse. T. at 71. Heather has sexually acted out in foster placement with strangers, family members and pets. T. at 72. Heather told Ms. Moody her "dad had been inappropriate with her, had touched her," and disclosed "her brother [Steven] had touched her inappropriately." T. at 73. Heather disclosed to appellant in writing the inappropriate touching by Steven, but appellant refused to believe it. T. at 73-74. Ms. Moody stated appellant was aware of the sexual abuse involving Heather because Jeff told her about it. T. at 84. Ms. Moody opined she had concerns about Heather being in the same home with Steven because it "isn't just with the sexual, it's the physical because he's very aggressive." T. at 76. Ms. Moody stated "Jeff is very afraid of Steven at times." Id.
 {¶ 27} During agency visits with Jeff and Heather, appellant's resident children were out of control. T. at 76, 88, 98-99. In fact, during one visit, "the police had to be called because he [Steven] got very aggressive." T. at 76. Steven is not allowed back at the agency. Id. Ms. Moody expressed great concern over appellant's ability to manage her children, and the possibility of continued physical and sexual abuse by Steven. T. at 77, 79.
 {¶ 28} When questioned about the inappropriate touching of Heather by Mr. Williamson, appellant stated "I have no proof of this because my daughter has never told me. She has never told me anything like this." T. at 132. Appellant explained "[f]irst she said it was my ex-husband, then she said it's my son, so I'm not quite sure what the story is." Id. Appellant does not believe that both Mr. Williamson and Steven could have "victimized" Heather. Id.
 {¶ 29} The telling factor in this case is despite appellant's adherence to part of the case plan, she is unable to control her resident children. The placement of Jeff and Heather, given their respective anger and sexually acting out issues, into such an uncontrolled environment would not be in their best interests. Like the trial court, we believe appellant made a sincere effort to comply with the case plan, but has been unable to accept the truth about the issues involving her children. She is unable to provide an environment that would be in the best interests of Jeff and Heather.
 {¶ 30} Upon review, we find the trial court did not err in awarding permanent custody of the children to appellee.
 {¶ 31} Assignment of Error I is denied.
 II {¶ 32} Appellant claims the trial court erred in finding appellee made reasonable efforts to reunite the family. We disagree.
 {¶ 33} Pursuant to R.C. 2151.419(A)(1), "the public children services agency or private child placing agency that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child" must have "made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts."
 {¶ 34} Because appellant moved to Muskingum County, it was necessary to transfer supervision to that county. T. at 22, 105. The Tuscarawas County caseworker, Ms. Bertini, continued as the on-going case manager. T. at 93-94. The Muskingum County caseworker, Ms. Loucks, understood appellant did not complete the required parenting classes and scheduled appellant to take the class via video which she completed. T. at 26-27, 35-36, 40. Said county also facilitated the assessment of Steven despite appellant's failure to get custody, paid appellant's outstanding electric bill and arranged for Section 8 housing. T. at 27, 36, 57.
 {¶ 35} To the extent that appellant argues the agencies should have taken into account her hearing impairment and its impact on her ability to complete the requirements of the case plan, the caseworkers testified to no problems in communicating with her. T. at 28-29, 100.
 {¶ 36} Upon review, we find the case plan provided basic steps for reunification, and the caseworkers expended reasonable efforts to help appellant.
 {¶ 37} Assignment of Error II is denied.
 {¶ 38} The judgment of the Court of Common Pleas of Tuscarawas County, Ohio, Juvenile Division is hereby affirmed.
topic: pc manifest weight
By Farmer, P.J., Edwards, J. and Boggins, J. concur.
[1] Mr. Williamson subsequently pleaded guilty to one count of rape involving Heather and is serving a ten year prison term. Mr. Williamson has had no contact with the children and did not complete any requirements of the case plan.